UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LOIS FRANK INDIVIDUALLY | * | Civil Action No.: 11-871 |
| AND ON BEHALF OF WELMAN FRANK, | * | Section: L (3) |
|     Plaintiffs | * | |
| V. | * | Judge: FALLON |
| | * | |
| SHELL OIL COMPANY, SHELL | * | Magistrate: KNOWLES |
| CHEMICAL, LP, TRAVELERS | * | |
| INS. CO. , AND THE TRAVELERS | * | |
| INDEMNITY CO. | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## OPPOSITION TO SHELL'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Plaintiffs' Welman Frank, et al, through undersigned counsel file this Opposition to

Defendants' Shell Oil Company and Shell Chemical Company's (hereinafter Shell) Motion to

Dismiss Pursuant to Rule 12(b)(6), and would show:

### Facts

Mr. Frank, worked for Fred Trosclair Contracting Services from 1972 to 1973, during

that time he was assigned to work at the Shell NORCO facility.  Later, from 1973 through 2002

Mr. Frank worked as a unit operator and shift foreman at the Shell NORCO refinery.  From 1972

to 2002 Mr. Frank was exposed to high levels of benzene on a daily basis while working with

and around the Defendant's products at the Shell NORCO facility. Shell Oil Co., Shell Chemical

L.P and its executive officers knew that their employees were developing blood cancers and

blood diseases as a result of exposure to benzene and benzene containing chemicals at its

NORCO facility.  Shell failed to warn it's warn its contract workers and employees that they

were contracting blood cancers and blood diseases.

1

Since at lease 1948, Shell had evidence, through the 1948 API study and other sources, that exposure to benzene caused leukemia and other blood disorders. Through internal studies on the health and mortality of their workers, Shell knew or should have known of the hazards inherent in the products it manufactured.

Shell failed to provide any warning or adequate safety gear to those workers exposed to benzene on a daily basis.  Shell knew that Plaintiff was substantially certain to become ill as a result of his exposure to benzene at the workplace.   Shell caused that exposure, without warning the plaintiffs of the risks.

As a result of this continual exposure of benzene from 1972 to 2002, Mr. Frank was diagnosed with ALL Leukemia in 2002.  In February 2010, Mr. Frank's widow, Lois Frank, learned that his illness and death could have been caused by his exposure to benzene at the Shell NORCO refinery.

As alleged in the Compliant, Shell has engaged in comprehensive practices to conceal the knowledge that exposure to benzene can cause blood cancers and blood diseases. As alleged in the Complaint, Shell maintained information regarding its workers, yet consistently under reported or failed to report death, mortality and occupational illness information on its workers to the appropriate federal agencies.[1] Shell published misleading reports and studies regarding the mortality, and occupational illnesses of its workers.[2]   Shell's Senior litigation attorney advocated a Benzene litigation defense strategy designed to confuse, obfuscate, and further conceal the truth of these matters from the courts and the plaintiffs in litigation.[3]

---

[1] Complaint, Rec. Doc. 1, ¶ 33-69.
[2] *Id.*
[3] Rec. Doc. No. 1, Exhibit 26; Benzene Litigation , Duties, Defenses and Strategies by Richard O. Faulk, Senior Litigation Attorney Shell Oil Co.

Plaintiffs' specifically allege that, in addition to the aforementioned fraud and fraudulent concealment, Shell failed to inform Mr. Frank or his wife of the health risks associated with exposure to benzene; failed to inform him that he was working with toxic levels of benzene; and concealed the dangerous nature of benzene and benzene products from Mr. Frank. Mr. Frank never learned of the link between benzene and his leukemia. His widow, Lois Frank, did not learn of the link between benzene and exposure and her husband's illness and death from ALL Leukemia until February of 2010. [Rec. Doc. 1, ¶ 96]

## Law and Arguments

### I.   Rules 12(b)(6) Review Standard

When reviewing a Petition under a Rule 12(b)(6) standard, the court "must construe the complaint liberally in favor of the plaintiff and must take all facts pleaded as true."[4]

The Court in *Floyd v. City of Kenner Louisiana* held: "To survive a motion to dismiss, a plaintiff is required to plead enough facts to state a claim to relief that is plausible on its face". [5] "A Claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [6]

Defendants rely heavily on the *Yanosky v. St. Tammany Parish School Board* and *Ashcroft v. Iqbal* cases in support of their arguments. However, as the court in *Floyd v. City of Kenner Louisiana* emphasized, a heightened pleading standard applies to claims against public

---

[4] *Kane Enterprises v. MacGregor (USA) Inc., 322 F. 3d 371, 374 (5th Cir. 2003), citing Campbell v. Wells Fargo Bank, 781 F.2d 440, 442 (5th Cir.1986).*
[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).
[6] Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L. ed. 2d 868 (2009). Floyd v. City of Kenner Louisiana, 351 Fed.Appx. 890, 2009 WL 3490278 (C.A. 5th Cir. La. 2009); *Yanosky, et al v. St. Tammany Parish School Board*, et al.,2010 U.S.Dist. LEXIS 28226 at *2 (E.D. La. March 3. 2010).

3

officials in their individual capacities. It is this heightened standard upon which *Yanosky* and *Ashcroft v. Iqbal* was decided.[7]

Both the *Yanosky v. St. Tammany Parish School Board* and *Ashcroft v. Iqbal* decisions are inapplicable to the case at bar. *Yanosky* and *Iqbal* involve suits against public officials in their individual capacities, and therefore apply a heightened pleading standard due to the nature of government official's qualified immunity

The Supreme Court in *Twombly* held that Rule 8(a) requires only " a short and pain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the… claims is and grounds upon which it rests."[8]   And that, "Rule 12(b)(6) does not countenance… dismissal based on a judge's disbelief of a complaint's factual allegations… a well pleaded complaint may proceed even if it appears that recovery is very remote an unlikely."[9]

The US District court of the Western District of Louisiana has held: "In deciding whether a fact issue has been created, the court must view the facts and the inferences in the light most favorable to the nonmoving party."[10]

Plaintiffs in the case at bar have made reference to sufficient supporting evidence, including prior testimony and Shell documents to support their allegations. Plaintiffs provided factual support for their allegations of negligence, strict liability, Article 2517 liability, intentional tort, executive officer liability, fraudulent concealment and other claims.[11]

---

[7] *Floyd v. city of Kenner,* 351 Fed.Appx 890, 893, 2009 WL 3490278 (5th Cir. La. 2009); see also *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L. ed. 2d 868 (2009).
[8] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 55 (2007). (internal citations omitted)
[9] Id. at 556
[10] *Frank C. Minvielle v. Imc Global Operations*, 380 F.Supp.2d 755 (W.D. La., 2004) citing *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir.1999)
[11] Rec. Doc. 1

## II.   Prescription

When requesting a case be dismissed under a 12(b)(6) motion for prescription the burden of proof is on the party alleging prescription.[12] The "courts should resolve all doubts about a prescription question in favor of giving the litigant his day in court".[13]

In general, under Louisiana law, a claim in tort for personal injuries is subject to a one-year period of liberative prescription, under Louisiana Civil Code art. 3492, which runs from the day injury or damage is sustained.[14] Prescription statutes are to be **strictly construed against prescription**" and "in favor of the claim that is said to be extinguished."[15] Of the two possible constructions, "the one that maintains the enforcement of the claim or action, rather than the one that bars enforcement, should be adopted."[16] The defendant has the initial burden of proving that a tort claim has prescribed.[17]   Where the cause of action is not known or reasonably knowable by the plaintiff, courts have used the doctrine of contra non valentem to prevent the running of prescription. [18]

There are two relevant exceptions which are applicable to Mr. Frank's claims in this case under the doctrine of *contra non valentem*. In the *Plaquemine Parish* case, the Louisiana Supreme Court listed four instances where contra non valentem is applied to prevent the running of prescription; the third and fourth categories are applicable here:

> (3)Where the *debtor himself has done some act* effectually to prevent the creditor from availing himself of his cause of action. This third category encompasses situations

---

[12] *Scott v. Metropolitan Life Ins. Co*.,  709 So.2d 223, 225, 1997-1445 , 3 (La.App. 4 Cir.,1998), citing *Parish of St. Charles v. Grimaldi Corporation,* 96-663, 696 So.2d 161, 162 (La.App. 5 Cir.1997); see also *Global ADR v. City of Hammond,* 2003 WL 22533654  at 2 (E.D. La. 2003).

[13] *Id*. at 2. citing *Ruhl*, 786 So.2d at 328

[14] La. Civ.. Code art. 3492 (West 2009) ("Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained....").

[15] *Terrebonne Parish School Board v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 320 (5th Cir. 2002)(emphasis added).

[16] *Id*.

[17] *Pearson v. Hartford*, 281 So.2d 724, 726 (La. 1973).

[18] *Cole v. Celotex Corporation,* 620 So.2d 1154, 1156 (La.1993).

> where **an innocent plaintiff has been lulled into a course of inaction in the enforcement of his right by reason of some concealment or fraudulent conduct on the part of the defendant,** or because of his failure to perform some legal duty whereby plaintiff has been kept in ignorance of his rights.
> (4)Where *the cause of action is not known or reasonably knowable* by the plaintiff, even though this ignorance is not induced by the defendant.[19]

In *Jordan*, the Louisiana Supreme Court stated that "[p]rescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong."[20] The court explained that, although a plaintiff should seek out those whom he believes may be responsible for a specific injury, prescription "should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage."[21] The court concluded by stating that "[w]hen prescription begins to run depends on the **reasonableness** of a plaintiff's action."[22]

Contrary to the allegations of Shell, diagnosis of illness is not synonymous with knowing the cause the illness.  Under Louisiana jurisprudence, prescriptive statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished.[23]  The burden of proof rests upon the party pleading prescription.[24]  Defendant fails to meet their burden of proof.  Defendant argues the prescriptive period expired because Mr. Frank was diagnosed in 2002, however defendants failed to provide any reasoning or evidence that would refute or contradict Plaintiffs allegations that Shell fraudulently concealed the dangers of benzene; that Shell failed to inform Mr. Frank of the dangers and health risks associated with benzene; failed to train its workers of the health risks of benzene; and that Mrs. Frank did not learn the cause of her husband's illness until 2010.  Plaintiffs provide specific factual references in support of their

---

[19] *Plaquemine Parish Commission Council v. Delta Development Co.*, 502 So.2d 1034, 1055 (La. 1987). (emphasis added)
[20] *Jordan v. Employee Transfer Corporation*, 509 So.2d 420, 423-24 (La. 1987).
[21] *Id.*
[22] *Id.*
[23] *Lima v. Schmidt*, 595 So.2d 624, 629 (La. 1992).
[24] *Pearson v. Hartford*, 281 So.2d 724, 726 (La. 1973).

allegations that Shell concealed information regarding the hazards of benzene.  The Frank's

fraudulent concealment allegations and failure to warn allegations, if accepted as true for

purposes of the 12(b)(6) motion, provide ample support for the application of contra non

valentum. <u>Constructive knowledge or notice sufficient to commence the running of prescription,</u>

<u>however, requires more than a mere apprehension that something might be wrong.</u>[25]

Plaintiff's claims could not have prescribed where the cause of action was not known.

The doctrine of *contra non valentem agere nulla currit praescriptio* prevents the running of

liberative prescription where the cause of action is not known or reasonably knowable by the

plaintiff.[26]  Without being informed, the Plaintiffs would simply had no way of knowing the

potential causes of Mr. Frank's Cancer.  As sad as it is to say, cancer appears to becoming a

more frequent illness.  Due to its deadly nature – both patients and doctors focus their energies

on treating the illness once it is diagnosed.  The cause of many cancers is unknown, even where

some causative factors are known, the knowledge is held by experts in the field and not generally

advertised to the public. Plaintiffs did not have advanced scientific or medical degrees, and had

no basis to suspect Mr. Frank's cancer was caused by his exposure to chemicals at work.

Therefore, if the plaintiff did not know he had a cause of action, his claims could not prescribe.

The case at bar is both factually and legally similar *Cole v. Celotex Corp.*[27]  The issue in

*Cole* was whether a worker who suffered from asbestosis acted reasonably by not filing suit

when he was diagnosed with pneumonia and placed in an asbestos survey program.[28]

Defendants argued that the plaintiff had actual or constructive knowledge of his asbestos-related

---

[25] *Landry v. Blaise, Inc.,* 829 So.2d 661, 665-66 (La. App. 4 Cir. 10/23/02).
[26] *Cole v. Celotex Corp.*, 620 So.2d 1154, 1156-57 (La. 1993).
[27] *Cole*, 620 So.2d at 1157.
[28] *Cole v. Celotex Corp.*, 620 So.2d 1154, 1156-57 (La. 1993).

lung disease years before filing suit.[29]  The Supreme Court of Louisiana disagreed.  The Court held that the plaintiff could not be charged with knowledge that he had asbestosis because there was no diagnosis of asbestosis in the medical record prior to filing suit.[30]  Although there was a letter in his records indicating he might have asbestos related lung disease, there was no evidence that the letter or information was ever communicated to the Plaintiff in *Cole*.  The Court reversed the order sustaining the exception of prescription and remanded the case for further proceedings.

In the *Evans v. Canadianoxy Offshore Production Co* case, the plaintiffs filed suit <u>16 years after the death </u>of the worker, alleging he had contracted multiple myeloma from benzene exposure at defendants' facility.[31] Plaintiffs alleged that prescription was interrupted by *contra non valentem* on two grounds.[32] First, plaintiffs contended (as in this case) that defendants had concealed information from the worker concerning the risk of contracting multiple myeloma from benzene exposure. Second, plaintiffs contended that their delay in filing suit was reasonable because they did not learn they had a cause of action until they heard about a lawyer who handled these cases.

The trial court denied the exception of prescription.[33] On appeal, the Louisiana Third Circuit Court of Appeal affirmed, holding that plaintiffs had raised factual issues sufficient to support the defense of *contra non valentem*, even though the suit had not been filed until some 16 years after the worker's death.[34]

The defendants then sought supervisory writs from the Louisiana Supreme Court, asking that the suit be dismissed as prescribed. Granting writs, the Supreme Court *refused* to *dismiss* plaintiffs' suit. Instead, and most significantly, the Supreme Court held that the exception

---

[29] *Cole v. Celotex Corp.*, 620 So.2d 1154, 1156-57 (La. 1993).

[30] *Cole v. Celotex Corp.*, 620 So.2d 1154, 1156-57 (La. 1993).

[31] *See Evans v. Canadianoxy Offshore Production Co.*, 1998-835 (La. App. 3 Cir. 12/9/98), 730 So.2d 466, *amended*, 1999-0061 (La. 3/19/99), 739 So.2d 214.

[32] *Id.*

[33] *Id.*

[34] Id.

should have been referred to the merits of the case because of the disputed factual issues concerning prescription and the applicability of *contra non valentem*.[35]

In *Scott v. Metropolitan Life Ins. Co.* the appellate court held that the petition had not prescribed on its face where plaintiff has was diagnosed with long latency occupational illness, mesothelioma, more than a year prior to the suit, and the Petition alleged that he did not discover the cause of his illness more than one year prior to filing the suit. **The court held that the burdened of proof rested with the party urging prescription to show that the claim had prescribed on its face**, and they had not done so.[36]

In *Casstano v. American Tobacco Co.*, 870 F. Supp. 1425 (E.D. La. 1994) the court denied 12(b)(6) Motions to Dismiss on the basis of prescription and preemption of federal law where the allegations included claims that the Defendants had maintained a continuous course of conduct to mislead Plaintiffs about the dangers of its products.[37] In the instant case we have similar situation – as noted in the Plaintiffs' Complaint [Rec. Doc. 1 ¶ 33-68]. "To date, SHELL continues to deny the causal relationship between benzene and leukemia (including ALL, AML and CLL), multiple myeloma, lymphoma and other blood cancers and refuses to warn employees coming into contact with SHELL products that contain benzene." As a result, under the *Castano* case, Shell's conduct is a continuing tort, and the prescriptive period has not begun to run.

Shell argues that Mr. Frank's diagnosis and death was tantamount to constructive notice. However, as noted, Shell still denies that exposure to benzene caused ALL Leukemia. Furthermore, Shell is a multi-billion dollar chemical company which not only had decades of experience manufacturing hydrocarbon products, but also a duty to investigate the health hazards of its products. On the other hand Mr. and Mrs. Frank have no advanced degrees in

---

[35] *Evans, supra*, 739 So.2d 214 (citing *Nathan v. Carter*, 372 So.2d 560 (La.1979)).
[36] *Scott v. Metropolitan Life Ins. Co.* 709 So.2d 223, 225, 1997-1445 , 3 (La.App. 4 Cir.,1998)
[37] *Casstano v. American Tobacco Co.*, 870 F. Supp. 1425, 1431 (E.D. La. 1994)

epidemiology, toxicology, medicine, chemistry or biology.  Therefore, Plaintiffs had no basis to

learn of the dangers – except  from Shell.  Plaintiffs' provide numerous references to Shell's

failure to disclose or provide the health information on their products to their workers. [Rec.

Doc.1, ¶ 33-68]  The affidavit of Frank M. Parker, demonstrates Shells' decisions not to provide

workers with information on hazardous materials including benzene. [Rec. Doc. 1-22, Exhibit

20]

## III.    PREEMPTION

In the seminal case of *Nathan v. Carter*, 372 So.2d 560 (La. 06/25/79),  the Louisiana

Supreme Court reversed the granting of an exception of prescription based on the fraud

committed by the defendants.  In that matter, the plaintiff's husband was killed in a workplace

accident, but she did not file suit for almost six years.  Within days of his death, his wife went to

the employer's office and spoke to the claims manager, who told her that if she contacted an

attorney, she would not receive any benefits while the litigation was pending, which could be

years.  At the hearing on the exception, the defendants offered no countervailing evidence, but

argued that the one-year period had lapsed.  The trial court agreed, but the Louisiana Supreme

Court applied *contra non valentem* to the matter, reasoning that the doctrine applied when:

> [D]efendant has concealed the fact of the offense or has committed acts (including
> concealment, fraud, misrepresentation, or other "ill practices") which tend to
> hinder, impede, or prevent the plaintiff from asserting his cause of action . . . .[38]

 Because the plaintiff had alleged acts of "fraud and misrepresentation," the doctrine applied.

The Court also held that the defendant's fraudulent acts "constituted a continuing threat

---

[38] *Nathan v. Carter*, 372 So.2d 560, 562 (La. 06/25/79).

calculated to prevent assertion of this claim," which further justified application of *contra non valentem.* [39]

While the *Nathan* Court did not specifically address the issue of peremption, the court in *Evans v. Canadianoxy Offshore Production Co.*, did so, and specifically held:

> [P]eremption of plaintiffs' La. Civ. Code art. 2315.1 survival action is suspended under *contra non valentem* if defendant's fraud prevented the exercise of their rights.[40]

In that matter, the plaintiffs alleged that the decedent, their husband and father, had been exposed for years to carcinogenic chemicals at his workplace, and as a result had contracted multiple myeloma, which caused his death.  They did not, however, learn that his cancer could be caused by the exposure until years later, and filed suit sixteen years after his death.  The defendant argued that the survival action was perempted under Article 2315.1.  The trial court denied the exception, and the Third Circuit affirmed.  The court acknowledged that the one-year period under the article was peremptive, but that the "question before us is whether the peremption can be fraudulently obtained."[41]

> The court noted that:
>
> Peremption is a matter to be determined by legislative intent and public policy.  If there is a readily apparent public policy which militates against suspension, interruption or renunciation of the time limit and in favor of certainty in the termination of causes of action, the legislation establishes a time limitation which is peremptive in nature.  The converse is also true.[42]

The court also found that "no court has held that peremption may be fraudulently obtained," and then concluded that the doctrine of *contra non valentem* applied to peremption in the case of

---

[39] *Id.* at 563.
[40] *Evans v. Canadianoxy Offshore Production Co.*, 730 So.2d 466,470  98-0835 (La. App. 3 Cir 12/09/98)
[41] *Id.* at 468.
[42] *Id.* at 468 (emphasis added).

fraud.  The court reviewed the history of fraud in Louisiana law,  noting the longstanding rule that "Fraud cuts down everything. . .  The law so abhors fraud that it will not allow technical difficulties of any kind to interfere to prevent the success of justice, right and truth."[43]  The court also cited former Louisiana Chief Justice Monroe of the Supreme Court who stated:

> No law was ever enacted which contemplated the defeat of its purpose by fraud, and no court was ever organized which would knowingly permit a litigant to profit by his own wrong.

*Id.* (citations omitted).  The court found there were legislatively enacted exceptions to peremption for fraud, and then held that such an exception should be applied when the defendant's fraud prevented the plaintiffs from exercising their rights within the one-year period.

The Louisiana Supreme Court granted writs, but did not reverse the Court of Appeal. Rather, the Court simply vacated the trial court's decision, and citing *Nathan*, ordered that the exceptions were to be referred to the merits based on the "factual nature" of the plaintiffs' allegations.[44]  Significantly, the Court did not make any effort to impugn the Third Circuit's reasoning or its conclusion that there was an exception to peremption for the defendant's fraud.

The reasoning of *Nathan* and *Evans* applies with equal force to the instant matter. Welman Frank worked for Shell for twenty-eight years and was exposed to benzene and benzene-containing products during that period.  At no time did his employer ever inform him about the hazards of benzene, even after his diagnosis.  Shell had a duty to inform its employees about any dangerous condition at the workplace.  They did not do so.  Fraud includes silence when there is a duty to speak. La. Civ. Code  art. 1953. Furthermore, Shell withheld information from OSHA and public agencies, and has continually denied the health risks posed by benzene

---

[43] *Id.* at 469.
[44] *Evans v. Canadianoxy Offshore Production Co.*, 739 So.2d 214, 99-0061 (La. 03/19/99).

and benzene containing products.[45]  This Court should not countenance Shell hiding behind the

doctrine of peremption to escape liability for its actions.  As the Supreme Court found in *Evans*,

the matter should be referred to the merits, and the exception of peremption denied.

## IV.    Plaintiffs' Claims Are Not Barred By The Louisiana Worker's Compensation Act.

The Louisiana Legislature amended the Louisiana Worker's Compensation laws in 1976

to eliminate negligence suits against executive officers. [46]  Where exposure to substances causing

latent injuries occurred prior to the effective date of the 1976 revisions to LA. R.S. 1032, the

injured workers are able to file suit against executive officers.[47]  The Fifth Circuit has held:

> Until 1976, Louisiana permitted injured workers to sue the officers of their
> corporate employers in tort, in addition to recovering under the Louisiana
> Workmen's Compensation Act. La.Rev.Stat.Ann. Sec. 23:1032 (West 1964); see
> *Canter v. Koehring Co.,* 283 So.2d 716 (La.1973). The corporate employer itself,
> however, was immune to similar suits. *Id*. In 1976, the Louisiana legislature
> amended the Workmen's Compensation Act so as to preclude such suits against
> executive officers, except to the extent they are based on intentional acts.[48]

Mr. Frank was exposed to Shell's benzene containing substances from 1972 through

1973 as a contract laborer and not an employee.  Therefore the worker's compensation statute

does not bar recovery for injuries during this time period.  Additionally, he worked at the Shell

NORCO facility and was exposed to benzene from 1973- to 1976, prior to the revision of LA.

R.S. 32:1032, granting immunity to executive offers under the worker's compensation scheme.

Therefore, Shell's executive officers are responsible for actions resulting in injury which

occurred prior to the revision of the Worker's Compensation Act in 1976. To the extent Shell

was self-insured, it is responsible for the liability of the executive officers during the course and

scope of their employment.

---

[45] Rec. Doc. 1 ¶33-68.
[46] Cole v. Celotex, 599 So.2d 1058, 1061) (La. 1992); La. R.S. 23:1032..
[47] Id.; See also *Ducre v. Executive Officers of Halter Marine, Inc.,* 752 F.2d. 976,981 (5th Cir. 1985).
[48] *Ducre v. Executive Officers of Halter Marine, Inc.,* 752 F.2d. 976,981 (5th Cir. 1985).

## V.    Intentional Tort

In *SWOPE v. Columbian Chemical Co*, the Fifth Circuit held that in order for an employee who was injured as a result of exposure to dangerous amounts of ozone to recover in tort from his employer, he must demonstrate that the employers actions fell within the intentional tort exception to the Louisiana Workers' Compensation Act.[49]  An intentional act means "the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) **knows that the result is substantially certain to follow from his conduct**, whatever his desire may be as to that result."[50]

The Court in *SWOPE* held

> The intent with which tort liability is concerned is not necessary a hostile intent, or a desire to do any harm  Rather it is an intent to bring about a result which will invade the interest of  another in a way that the law forbids…
> Bodily harm is generally considered to be any physical impairment of the condition of a person's body, or physical pain or illness,   The defendant's liability for the resulting harm extends, as in most other cases of intentional torts, to consequences which the defendants did not intend and could not reasonably have foreseen, upon the basis that it is better for unexpected losses to fall upon the intentional wrongdoer than upon the innocent victim.[51]

In Louisiana, battery does not require direct bodily contact, the Court in *SWOPE* held that "the victim need not be aware of the contact when it occurs".[52]  The court in *SWOPE* overturned a grant of summary judgment on the issue of tort remedies being precluded by the exclusive remedies of the Louisiana Workers Compensations Law.[53]  The Court held that genuine materials facts remained as to whether the employer knew to a substantial certainty that

---

[49] *SWOPA v. Columbian Chemical Co.*, 281 F.3d 185, 195 ( 5th Cir. 2002).
[50] *Id*.(emphasis added).
[51] *Id*.
[52] *Id*.
[53] *Id.*

continually exposing the employee to ozone without respiratory protection was causing bodily harm, therefore summary judgment was inappropriate.[54]

Other courts have also recognized intentional torts in the workplace:

In *Major v. Fireman's Fund Insurance Co.* the Louisiana Fourth circuit reversed a Motion for Summary Judgment dismissing plaintiff-employees tort claims on the basis that they were precluded by Louisiana's Louisiana Workers Compensation Law.[55] The court found that there were genuine issues of material fact as to whether the employer knew or was substantially certain  that  if employee was forced to continue working with chemicals it would cause bodily injury, where a Doctor said he could no longer work with chemicals.[56]

The Third circuit in *Belgard v. American Freightways, Inc.* reversed a summary judgment dismissing plaintiff-employees tort claims on the basis that they were precluded by Louisiana's Louisiana Workers Compensation Law where genuine issues of material fact existed as to supervisors intent and knowledge in ordering employee into an areas of toxic fumes.[57] In *Belgard v. American*, Defendant ordered an unprotected worker into an areas of toxic fumes that had just been evacuated of other workers to protect them.[58] The supervisor had first hand experience of the toxic fumes and in spite of this knowledge he ordered the Plaintiff into the area of the toxic fumes.[59] The court held "***Summary judgment is hardly ever appropriate when there are questions relating to subjective facts such as intent, knowledge, motive, malice or good faith.***" [60]

---

[54] *Id.*
[55] *Major v. Fireman's Fund Insurance Co*., 506 So.2d.583 (La. App. 4 Cir. 1987).
[56] *Major v. Fireman's Fund Insurance Co*., 506 So.2d.583 (La. App. 4 Cir. 1987).
[57] *Belgard v. American Freightways, Inc.,* 755 So.2d 982, 985-986 1999-1067 (La. App. 3 Cir 12/29/99).
[58] *Id.*
[59] *Id.*
[60] *Id.* at 986

In *Trahan v. Trans- Louisiana Gas Company, Inc.* the Louisiana Third Circuit once again reversed and remanded  a dismissal on summary judgment on the basis that Plaintiffs' sole remedy was under Louisiana Workers Compensation.[61] Mr. Trahan collapsed and suffered neuro-toxic injuries after being exposed to excessive amounts of mercaptan, an odorant that is injected into natural gas.[62] The plaintiff was working with contaminated natural gas, which was known to neutralize the effect of the odorant, resulting in the use of much higher concentrations than normal.[63] Plaintiff had become ill on two prior occasions using Defendant's work procedures when working around contaminated gas.[64] Tran- La's violations of safety regulations were so blatant as to make the injury done to Trahan substantially certain to occur.  The court held that the Plaintiffs had met the "substantially certain" test of  *Bazley*.[65] The court explained, that under the *Bazley* test  "intent is not limited to the consequences which are desired.  If the actor knows that the consequences are substantially certain to result from his act and still goes ahead, he is treated by the law as if he in fact desired to produced the result."[66]

In the case at bar the Plaintiffs have provided sufficient factual support to meet the 12(b)(6) standard expressed by the court in *Bell Atl. Corp. v. Twombly*.[67]  Plaintiffs' have referenced, publications, prior testimony of Shell employees, prior internal documents and correspondence of Shell, all indicating they were aware that exposure to benzene would cause injury to the blood and blood forming organs.

---

[61] *Trahan v. Trans- Louisiana Gas Company , Inc.,*618 So.2d.30-31 ( LA. App. 3 Cir. 1993).
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Id.* at 31.
[66] *Id.* at 32, citing *Major v. Fireman's Fund Insurance Co.*, 506 So.2d 583 (La. App. 4 Cir. 1987); *Bazley v. Tortorich*, 397 So. 2d 475 (La. 1981).; See Also *Quick v Myers Welding and Fabricating Inc.*, 649 So.2d 999, 94-282 (La. App. 3 Cir. 12/7/94).
[67] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).

The following information shows Shell was substantially certain that injury would result from continually exposing workers like Mr. Frank to benzene:

- In 1942, Shell prepared a memo entitled, Properties of Benzene-Norco Refinery Benzene Shell Oil Co. reporting that benzene causes blood diseases and disorders.[68]

- By the end of 1948, as a result of the American Petroleum Institutes Toxicological Review on Benzene, it was widely known in the Unites states, to those in defendants' industry, as well as the named defendants, that exposure to benzene could cause a myriad of ill heath effect including diseases such as leukemia and other blood disorders.[69]

- In 1957, CH Hines reported that Shell Oil Co. has known for years that benzene causes damage to the blood.[70]

- On March 18, 1977, Shell Oil Co. documented 8 cases of Multiple Myeloma, 18 cases of lymphoma and 2lcases of leukemia including 5 cases of CLL Leukemia in an unpublished internal study that was authored by the Shell Oil Co., Corporate Medical Director, Dr. Roy Joyner, entitled, "Report on Mortality From Leukemia and Lymphoma," 3/18/77[71]

- On August 01, 1977, under oath Dr. Joyner and Dr. Stallones testified that Shell did not have any other cases of blood dyscrasia other than the leukemia cases presented to OSHA.[72]

- Shell Oil Co. did not disclose the 8 cases of multiple myeloma, and the 18 cases of lymphoma to OSHA at the Temporary Benzene Standard Hearings as requested.[73]

- On October 13, 1978, Shell Norco found 59 out of 130 Shell employees had one or more blood abnormalities.[74] Yet, Shell continued to conceal the health effects and the significance of the blood abnormalities from workers that were exposed to benzene on a daily basis.

- On. May 02, 1985, C.E. Ross of Shell Oil Co. prepared a review of SMR Elevations at Shell Refineries from 1973-1983 which found elevated cases of blood cancers including multiple myeloma, CLL Leukemia, and lymphoma.[75] Yet, Shell concealed the findings from Mr. Frank and others.

---

[68] Rec. Doc. No. 1-4 and 1-5, Exhibit 3, Properties of Benzene-Norco Refinery, July 03, 1942, Shell Oil Co. Memo, Bates # 10025-10073.
[69] Rec. Doc. No. 1-3, Ex 2, American Petroleum Institutes Toxicological Review on Benzene, September, 1948.
[70] Rec. Doc. No. 1-6, Ex 4, Shell Oil Co. Memo by CH Hines, January 22,1957, Bates # 12956.
[71] Rec. Doc. No. 1-7, Ex 5, Unpublished Report, Report on Mortality From Leukemia and Lymphoma 3/18/77, Roy Joyner, Shell Oil Co., Corporate Medical Director, Bates #9231-9259.
[72] Rec. Doc. No. 1, ¶ 27, Rec. Doc. 1-8, Ex 6, Deposition of Dr. Roy Joyner, Corporate Medical Director, Shell Oil Co., June 22, 2009, at pg. 35-37.
[73] Rec. Doc. No. 1, ¶27, Rec. Doc. 1-8, Ex 6 Deposition of Roy Joyner, Corporate Medical Director of Shell Oil Co., pg.35-37.
[74] Rec. Doc. No. 1, ¶ 27, Ex . 7Shell Oil Co. Memo, Norco Benzene Medical Surveillance Program 10/13/78, Bates # 10765-10777.
[75] Rec. Doc. No. 1,¶27, Ex 13 [Rec. Doc. 1-15]Review of SMR Elevations at Shell Refineries 1973-1983, 5/2/85, C.E. Ross, Bates # 12603-12607.

17

- Dr. Tsai testified that the Shell Oil Epidemiology Department does not report cases of multiple myeloma to the USEPA under the Toxic Substance Control Act.[76]

- In 1987, OSHA made an official statement that epidemiological evidence demonstrates that benzene exposure can cause multiple myeloma and leukemia.[77]

Plaintiffs petition for damages further details the findings regarding Shells' medical monitoring/ mortality tracking and the death of employees at their facilities from diseases such as Leukemia, multiple myeloma, myelodysplastic syndrome, CML leukemia, lymphoma, and the causal link between benzene exposure and blood diseases and blood cancers. Plaintiffs attached the relevant testimony, correspondence, and documents to the Complaint to support their allegations.

These documents show that Shell was aware that exposure to benzene was substantially certain to cause blood diseases and blood cancers such as leukemia, multiple myeloma, myelodysplasia, and lyphomas when they chose not to warn workers, monitor workers exposure, or provide health and safety gear that would prevent exposure. Therefore, defendants were substantially certain that bodily injury would occur from the plaintiffs exposure to high levels of benzene in the workplace, of which the defendants were responsible for.

---

[76] Rec. Doc. No. 1-20, Ex 18, Deposition of Shan Tsai, June 25, 2009, pg. 38.
[77] Rec. Doc. No. 1-21, Ex 19, Federal Register, OSHA, 29 CFR Part 1910, September 11, 1987, Occupational Exposure to Benzene, Final Rule.

18

## Conclusion

Shell has not met its burden under the standards for a Motion to Dismiss under Rule 12(b)(6). Therefore Plaintiffs' respectfully request this Honorable Court deny Shell's Motion to dismiss.

Respectfully submitted,

L. ERIC WILLIAMS, JR., LSBN 26773
**WILLIAMS LAW OFFICE, LLC**
3000 W. Esplanade Ave.
Metairie, Louisiana  70002
Telephone: (504) 832-9898
Facsimile:  (504) 834-1511
eric@amlbenzene.net

&

 /s/ Amber E. Cisney   _____
RICHARD J. FERNANDEZ, LSBN 05532
AMBER E. CISNEY, LSBN 28821
**LAW OFFICE OF RICHARD J. FERNANDEZ,** LLC
3000 West Esplanade Avenue, Suite 200
Metairie, Louisiana  70002
Telephone: (504) 834-8500
Facsimile: (504) 834-2609
rick@rjfernandez.net
amber@amlbenzene.net
**ATTORNEY FOR PLAINTFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on all known counsel of record in this proceeding by email  or facsimile on this 10th day of June, 2010.

____/s/Amber E. Cisney_____
Amber E. Cisney